## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| ROY WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No.: **2:07cv-1117-MEF** |
| | ) | |
| HARLEY LAPPIN, Director, Federal | ) | |
| Bureau of Prisons, and | ) | |
| DARLENE DREW, Warden, | ) | |
| FPC Montgomery, | ) | |
| | ) | |
| Respondents. | ) | |

## MOTION FOR LEAVE TO FILE DOCUMENTS

Come now the Respondents, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and respectfully request that the attachments hereto marked as "Attachment 6" and "Attachment 7" be supplemented in support of the Response to Petition (Doc. # 10) filed on Wednesday, February 27, 2008, and as grounds state the following:

1.      These two attachments were unavailable at the time of filing the Response to Petition.

2.      Respondents, rather than seeking additional time from the court, filed the response by the set deadline in anticipation of seeking leave to supplement once the attachments were received.

WHEREFORE, premises considered, Respondents respectfully request leave to file "Attachment 6" and "Attachment 7" as supplements in support of the Response to

Petition (Doc. # 10) filed February 27, 2008.

LEURA G. CANARY
United States Attorney

By: s/R. Randolph Neeley
R. RANDOLPH NEELEY
Assistant United States Attorney
Bar Number: 9083-E56R
Post Office Box 197
Montgomery, AL  36101-0197
Telephone No.: (334) 223-7280
Facsimile No.: (334) 223-7418
**E-mail: rand.neeley@usdoj.gov**

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2008, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed, by

United States Postal Service, a copy of same to the following non-CM/ECF participant(s):

Roy Williams, Reg. No. 17566-075
Montgomery Federal Prison Camp
Inmate Mail/Parcels
Maxwell Air Force Base
Montgomery, AL 36112

s/R. Randolph Neeley
Assistant United States Attorney

Attachment 6

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE AFFECTED:** 7310.04
**CHANGE NOTICE NUMBER:** 7310.04
**DATE:** 12/16/98

1.  <u>PURPOSE AND SCOPE</u>.  To reissue the Program Statement on **Community Corrections Center (CCC) Utilization and Transfer Procedures**.

2.  <u>SUMMARY OF CHANGES</u>.  This reissuance incorporates text consistent with the recently issued Program Statement on Categorization of Offenses.  In addition, text and procedural improvements recommended by field and Regional Office staff have also been incorporated.  These changes are summarized below:

* Incorporates recommendations made by the Mothers and Infants Together (MINT) workgroup;
* Allows inmates who are otherwise eligible for camp placement to be transferred to a camp prior to transfer to a CCC; and,
* Eliminates the possibility of "stacking" time in a halfway house by combining Bureau referral placement with public law or supervised release placement.

3.  <u>ACTION</u>.  File this Change Notice in front of the Program Statement on **Community Corrections Center (CCC) Utilization and Transfer Procedure**.

/s/
Kathleen Hawk Sawyer
Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 7310.04
**DATE:** 12/16/98
**SUBJECT:** Community Corrections
Center (CCC)
Utilization and
Transfer Procedure

1.  <u>PURPOSE AND SCOPE</u>.  To provide guidelines to staff regarding the effective use of Community Corrections Centers (CCCs).  This Program Statement defines placement criteria for offenders, requires that staff members start the placement process in a timely manner, and defines the circumstances when inmates may refuse Community Corrections (CC) programs.  It also establishes an operational philosophy for CCC referrals that, whenever possible, eligible inmates are to be released to the community through a CCC unless there is some impediment as outlined herein.

CCCs provide an excellent transitional environment for inmates nearing the end of their sentences.  The level of structure and supervision assures accountability and program opportunities in employment counseling and placement, substance abuse, and daily life skills.

One reason for referring an inmate to a CCC is to increase public protection by aiding the transition of the offender into the community.  Participating in community-based transitional services may reduce the likelihood of an inmate with limited resources from recidivating, whereas an inmate who is released directly from the institution to the community may return to a criminal lifestyle.  While clearly dangerous inmates should be separated from the community until completing their sentences, other eligible inmates should generally be referred to CCCs to maximize the chances of successful reintegration into society.

Finally, the scope of this Program Statement has been extended to include CCC consideration/placement of District of Columbia Department of Corrections inmates.

2.  <u>PROGRAM OBJECTIVES</u>.  The expected results of this program
are:

   a.  All eligible inmates will have opportunities to participate
in CCC programs to assist with their reintegration into the
community, in accordance with their release needs.

   b.  All inmates will have opportunities to communicate directly
with staff who make significant CCC referral recommendations.

   c.  Referral packets for CCC placement will be timely and
complete.

   d.  Before any inmate is transferred to a CCC, the CCC staff
will have the required notice and other documentation.

   e.  The public will be protected from undue risk.

3.  <u>DIRECTIVES AFFECTED</u>

   a.  <u>Directive Rescinded</u>

      PS 7310.03      Community Corrections Center (CCC)
                      Utilization and Transfer Procedures (3/25/96)

   b.  <u>Directives Referenced</u>

      PS 1434.06      Jurisdiction on Escape Related Issues -
                      Memorandum of Understanding USMS/FBI/BOP
                      (7/25/94)
      PS 1490.04      Victim and Witness Notification (2/3/98)
      PS 5100.06      Security Designation and Custody
                      Classification Manual (6/7/96)
      PS 5110.12      Notifications of Release to State and Local
                      Law Enforcement Officials (1/21/98)
      PS 5180.04      Central Inmate Monitoring System (8/16/96)
      PS 5250.01      Public Works and Community Service Projects
                      (1/19/93)
      PS 5264.06      Telephone Regulations for Inmates (12/22/95)
      PS 5280.08      Furloughs (2/4/98)
      PS 5322.10      Classification and Program Review of Inmates
                      (9/4/96)
      PS 5325.05      Release Preparation Program, Institution
                      (7/18/96)
      PS 5330.10      Drug Abuse Programs Manual, Inmate (5/25/95)
      PS 5380.05      Financial Responsibility Program, Inmate
                      (12/22/95)

| | |
|---|---|
| PS 5550.05 | Escape from Extended Limits of Confinement (3/27/96) |
| PS 5553.05 | Escapes/Deaths Notification (9/17/97) |
| PS 5800.07 | Inmate Systems Management Manual (12/24/91) |
| PS 5800.11 | Central File, Privacy Folder, and Parole Mini File (9/7/97) |
| PS 5873.05 | Release Gratuities, Transportation, and Clothing (9/4/96) |
| PS 5882.03 | Fines and Costs (2/4/98) |
| PS 6000.05 | Health Services Manual (9/15/96) |
| PS 6070.05 | Birth Control, Pregnancy, Child Placement, and Abortion (8/9/96) |
| PS 7300.09 | Community Corrections Manual (1/12/98) |
| PS 7320.01 | Home Confinement (9/6/95) |
| PS 7331.03 | Pretrial Inmates (11/22/94) |
| PS 7430.01 | Community Transitional Drug Treatment Services, Inmate (1/20/95) |

18 U.S.C. § 3621(b)
18 U.S.C. § 3624(c)

4.  STANDARDS REFERENCED

   a.  American Correctional Association 3rd Edition Standards for
Adult Correctional Institutions:  3-4265, 3-4343, 3-4343-1,
3-4387, 3-4388, 3-4388-2, 3-4389, 3-4391, 3-4393, 3-4393-1

   b.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities:  3-ALDF-3E-04, 3-ALDF-4E-19,
3-ALDF-4E-19-1, 3-ALDF-4F-04, 3-ALDF-4F-05, 3-ALDF-4F-07,
3-ALDF-4G-01, 3-ALDF-4G-06, 3-ALDF-4G-07

   c.  American Correctional Association 2nd Edition Standards for
Administration of Correctional Agencies:  2-CO-4G-01, 2-CO-4G-02

   d.  American Correctional Association Standards for Adult
Correctional Boot Camp Programs:  1-ABC-3D-04, 1-ABC-4E-20,
1-ABC-4F-08, 1-ABC-4F-10, 1-ABC-4G-01, 1-ABC-4G-02, 1-ABC-4G-03,
1-ABC-4G-06

5.  STATUTORY AUTHORITY.  18 U.S.C. § 3624(c), provides:

   "The Bureau of Prisons shall, to the extent practicable,
   assure that a prisoner serving a term of imprisonment spends
   a reasonable part, not to exceed six months, of the last ten
   per centum of the term to be served under conditions that
   will afford the prisoner a reasonable opportunity to adjust

to and prepare for the prisoner's reentry into the
community.  The authority provided by this subsection may be
used to place a prisoner in home confinement.  The United
States Probation Office shall, to the extent practicable,
offer assistance to a prisoner during such pre-release
custody."

18 U.S.C. § 3621(b) provides:

"The Bureau of Prisons shall designate the place of the
prisoner's imprisonment.  The Bureau may designate any
available penal or correctional facility . . . the Bureau
determines to be appropriate and suitable."  A CCC meets the
definition of a "penal or correctional facility."

Therefore, the Bureau is not restricted by § 3624(c) in
designating a CCC for an inmate and may place an inmate in a CCC
for more than the "last ten per centum of the term," or more than
six months, if appropriate.

Section 3624(c), however, does restrict the Bureau in placing
inmates on home confinement to the last six months or 10% of the
sentence, whichever is less.

6.  PRETRIAL/HOLDOVER AND/OR DETAINEE INMATES.  This Program
Statement does not apply to pretrial, holdover, or detainee
inmates.

7.  COMMUNITY-BASED PROGRAMS

   a.  Community Corrections Centers (CCC).  CCCs, commonly
referred to as "halfway houses," provide suitable residence,
structured programs, job placement, and counseling, while the
inmates' activities are closely monitored.  All CCCs offer drug
testing and counseling for alcohol and drug-related problems.
During their stay, inmates are required to pay a subsistence
charge to help defray the cost of their confinement; this charge
is 25% of their gross income, not to exceed the average daily
cost of their CCC placements.  Failure to make subsistence
payments may result in disciplinary action.

   These contract facilities, located throughout the United
States, provide two program components:  the Community
Corrections Component and the Prerelease Component:

     (1)  The Community Corrections Component is designed as the
most restrictive option.  Except for employment and other
structured program activities, an inmate in this component is

PS 7310.04
12/16/98
Page 5

restricted to the CCC.  An inmate shall ordinarily be placed in
the Community Corrections Component upon arrival at the CCC.

This orientation period normally lasts for two weeks or
until the inmate has demonstrated to CCC staff the responsibility
necessary to function in the community.  Based on their
professional judgment, CCC staff shall determine when an inmate
is prepared to advance to the Prerelease Component.

(2)  The Prerelease Component is designed to assist inmates
making the transition from an institution setting to the
community.  These inmates have more access to the community and
family members through weekend and evening passes.

b.  Community Corrections Programs.  In addition to a CCC's
traditional services, the Bureau also has the following
community-based programs.  Referral procedures may be described
in independent Bureau directives issuances.  The Community
Corrections Manager (CCM) reviews the inmate's characteristics
and the recommendations noted in the referral package to
determine if one of the following programs (if available) may be
more appropriate than traditional CCC placement.

(1)  Comprehensive Sanctions Center (CSC).  The CSC concept,
initiated by the Bureau, with the extensive cooperation and
teamwork of U.S. Probation and CCC contractors, was developed to
provide courts with a wider range of sentencing options and to
facilitate the development and implementation of community
program plans tailored to the individual needs of prerelease
inmates.

The CSC is designed to meet the needs of higher risk
prerelease inmates and consists of six different levels of
supervision, ranging from 24-hour confinement to Home
Confinement.

It also may have an intensive treatment component consisting
of substance abuse education and treatment, life skills training,
mental health counseling, education, employment assistance, and
mentoring.  The inmate's progress is systematically reviewed by a
Program Review Team (PRT), consisting of representatives from the
Bureau, U.S. Probation, and the CCC.

(2)  Mothers and Infants Together (MINT).  MINT is an
alternative residential program that promotes bonding and
parenting skills for low risk female inmates who are pregnant.
The inmate is placed in the program two months prior to delivery
and remains there for three months after delivery.

(3)  Home Confinement.  Home Confinement is a generic term
used to cover all circumstances in which an inmate is required to
remain at home during non-working hours of the day.  Electronic

PS 7310.04
12/16/98
Page 6

monitoring equipment is sometimes used to monitor compliance with the program's conditions. These programs provide an opportunity for inmates to assume increasing levels of responsibility, while, at the same time, providing sufficient restrictions to promote community safety and convey the sanctioning value of the sentence.

Home Confinement provides an option for inmates who do not need the structure of a residential facility. Except for inmates who are initially sentenced to and graduate from the Intensive Confinement Center Program, statutory provisions limit the length of Home Confinement to the last 10% of the sentence, or six months, whichever is less. Inmates are required to pay subsistence of 25% of their gross income to defray the costs of Home Confinement and electronic monitoring.

The Bureau is involved in two Home Confinement programs: Home Confinement operates from the Bureau's own network of CCCs and the U.S. Probation Division program.

(a) <u>CCC Contractors</u>. The first form of Home Confinement is CCC contractor-operated programs. In these programs, CCC staff monitor the inmate. Currently, only a few of these programs use electronic monitoring equipment. Supervision is provided by daily telephone contacts and periodic personal contacts in the home and workplace.

(b) <u>U.S. Probation Office</u>. The second form of Home Confinement involves placing federal inmates in programs operated by the U.S. Probation Office. These programs use electronic monitoring equipment with U.S. Probation Officers (USPO) providing supervision.

(4) <u>Transitional Services Program (TSP)</u>. The community-based transition phase of the Bureau's Residential Drug Treatment Program is designed to complement the accomplishments and continue the institutional program's treatment plan. It reinforces the inmate's personal responsibility to lead a drug-free lifestyle through personal accountability for choices, confrontation of negative thinking patterns, and instruction in basic social skills. Inmates who successfully complete the Residential Drug Treatment Program's institutional phase should normally be considered for the maximum 180 day period of CCC placement, if they are otherwise eligible.

PS 7310.04
12/16/98
Page 7

(5) <u>Intensive Confinement Center (ICC)</u>. A lengthy period of Community Corrections Center confinement follows the completion of the ICC program's institutional phase. The CCC time is divided among the restrictive Community Corrections Component, the Prerelease Component, and Home Confinement. Specific referral procedures are outlined in the ICC Program Statement.

8. <u>RELEASE PLAN</u>. Staff shall begin release planning at an inmate's first team meeting, normally the initial classification, and shall continue throughout the inmate's confinement. The following guidelines apply:

a. Planning early in an inmate's period of confinement is necessary to ensure release preparation needs are identified and appropriate release preparation programs are recommended.

b. Preliminary decisions regarding eligibility for CC Programs are to be made well in advance of the last year of confinement.

c. A final and specific release preparation plan, including a decision as to CCC referral, is normally established at a team meeting no later than 11 to 13 months before an inmate's projected release date.

9. <u>CCC CRITERIA AND REFERRAL GUIDELINES</u>

a. <u>Regular Referrals</u>. Staff shall make recommendations for CCC placements based on assessments of inmate needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly. CCCs are a program element and are not to be used as a reward for good institutional behavior, although an inmate's institutional adjustment may be a factor in making a referral determination.

A number of factors must be weighed to determine the length of CCC placement for inmates, including their individual needs and existing community resources. Ordinarily, inmates with shorter sentences do not require maximum CCC placement due to reduced transition needs. Additionally, inmates who are required to spend a portion of time in a CCC as a condition of release (i.e. supervised release or court order) do not require an extended Bureau CCC placement. For example, if the Unit Team determines the inmate needs a six month CCC placement, but the inmate is required to stay in a CCC for 90 days as a condition of release, then the institution shall ordinarily refer the inmate for a 60-90 day CCC placement.

PS 7310.04
12/16/98
Page 8

**Referrals to CCM offices should include a recommendation
regarding the length of stay (range), such as recommending 60 to
90 days or 90 to 120 days, etc.  This range of at least 30 days
allows the CCM to match population needs with budgetary and CCC
bed space resources, a process which requires this flexibility.**

However, there will be cases when the institution, for various
management reasons, wants the CCM to place the inmate not earlier
than a specific date.  Then, the CCC referral form should specify
a recommended placement date rather than a range and further
state that the CCM should not adjust that date.  The CCM shall
adhere to the recommended date, with any adjustment only being
downward if budget and/or bed space constraints are a factor.

The following CCC referral guidelines apply:

    (1)  An inmate may be referred up to 180 days, with
placement beyond 180 days highly unusual, and only possible with
extraordinary justification.  In such circumstances, the Warden
shall contact the Regional Director for approval and the Chief
USPO in the inmate's sentencing district to determine whether the
sentencing judge objects to such placement.

    (2)  The ultimate goal is to maximize each eligible inmate's
chances for successful release and a law-abiding life.

    (3)  When an inmate has a history of escape or failure in
one or more CC Programs, careful review and consideration should
be given regarding the suitability of participation and the
length of placement.

    (4)  Inmates with minor medical conditions or disabilities
may also be considered for community placement.  Inmates are
required to assume financial responsibility for their health care
while assigned to community programs.  Such inmates must provide
sufficient evidence to institution staff of their ability to pay
for health care while at a CCC prior to the referral being made.
When an inmate is unable or unwilling to bear the cost of
necessary health care, the inmate shall be denied placement.

    (5)  Inmates who have been approved for CCC referral and are
otherwise appropriate for camp placement shall be transferred to
a camp for intermediate placement.  The inmate should have
completed the Institution Release Preparation Program at the
parent institution.  The parent institution shall complete the
CCC referral packet and the camp should be closer to the inmate's
release residence.  This process should be completed to allow the

PS 7310.04
12/16/98
Page 9

inmate a minimum of a 60 day placement at the camp prior to the
acceptance date at the CCC.

   b.  <u>MINT Referrals</u>.  Female inmates are eligible to enter the
program at the CCC generally during their last two months of
pregnancy.  After birth, the mother is allowed three additional
months to bond with the child.  The mother shall then be returned
to an institution to complete her sentence.  If she is eligible
for prerelease services, she may remain at that facility only if
she is going to be supervised in that judicial district.

   The CEO may approve early or extended placements with a
recommendation by the treating obstetrician and Clinical
Director's concurrence.  A placement extending beyond 180 days
requires the Regional Director's approval.  Direct court
commitments shall have a secondary designation noted on the
Inmate Load and Security/Designation form (BP-337).  This shall
be used to determine the institution responsible for the inmate's
medical expenses while she is confined in the MINT Program.

   Authority to pay immediate post-natal care of the child born to
an inmate while in custody is derived from administrative
discretion when the Bureau finds itself responsible for the cost
by default (no other resources can be compelled to pay).  It is
reasonable that the Bureau provides for the child's medical
expenses for the first three days after routine vaginal birth or
up to seven days for a Cesarean section.

   Prior to the birth, the mother must make arrangements for a
custodian to take care of the child.  At this time, the CEO shall
ensure the person or agency taking custody of the child is also
asked to be responsibile for medical care costs beyond three days
after birth.  (<u>Note</u>:  This may be extended by the Regional
Director for an additional seven days for extenuating
circumstances on a case-by-case basis.)  The person(s) receiving
custody of the child should sign a Statement of Responsibility
for medical care costs, clearly indicating that the signing party
accepts financial responsibility.  Unit Management staff are
responsible for obtaining this statement, and forwarding copies
to the Health Services Administrator (HSA) for placement in the
HSA's outside hospitalization file and to the Controller (see the
Sample Statement of Responsibility (Attachment D)).

   Health Services staff shall confirm an inmate's pregnancy and
evaluate her medical condition.  Health Services staff shall
indicate whether CCC placement is medically appropriate and
document this on the Medical Evaluation for Transfer of Inmates
to CCC Type Facility (BP-351) which shall be forwarded to the
Unit Team.

   When the Unit Team has concerns regarding the appropriateness
of a CCC placement (such as criminal history, severity of current

offense), procedures will be followed according to Section 10.i.(2), Limitations on Eligibility for All CCC Referrals.

The following CCC referral guidelines apply in addition to the guidelines provided for regular referrals:

(1)  The inmate must be pregnant upon commitment with an expected delivery date prior to release.

(2)  The inmate or guardian must assume financial responsibility for the child's care, medical and support, while residing at the CCC.  Should the inmate or the guardian be unable or unwilling to bear the child's financial cost, the inmate may be transferred back to her parent institution.

(3)  An inmate who becomes pregnant while on furlough, or has more than five years remaining to serve on her sentence(s), or plans to place her baby up for adoption shall not be referred for MINT placement.

**Referrals to CCMs should state a specific date of placement. This date should be approximately two months prior to the inmate's expected delivery date.**

The CCC's Terminal Report should fully describe the inmate's experience in, and reaction to, the MINT Program.  It should also summarize counseling received in the program and include follow-up medical or program recommendations for the institution to facilitate the inmate's transition.

Inmates in need of foster care placement assistance shall be referred to the institution social worker, or if the institution does not have a social worker, staff shall contact a social worker in the community for foster care placement assistance.

10.  LIMITATIONS ON ELIGIBILITY FOR ALL CCC REFERRALS.  Inmates in the following categories shall not ordinarily participate in CCC programs:

a.  Inmates who are assigned a "Sex Offender" Public Safety Factor.

b.  Inmates who are assigned a "Deportable Alien" Public Safety Factor.

c.  Inmates who require inpatient medical, psychological, or psychiatric treatment.

PS 7310.04
12/16/98
Page 11

d.   Inmates who refuse to participate in the Inmate Financial Responsibility Program.

e.   Inmates who refuse to participate, withdraw, are expelled, or otherwise fail to meet attendance and examination requirements in a required Drug Abuse Education Course.

f.   Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement.

g.   Ordinarily, inmates serving sentences of six months or less.

h.   Inmates who refuse to participate in the Institution Release Preparation Program.

i.   Inmates who pose a significant threat to the community. These are inmates whose current offense or behavioral history suggests a substantial or continuing threat to the community.

Examples are inmates with repeated, serious institution rule violations, a history of repetitive violence, escape, or association with violent or terrorist organizations.

To determine whether an inmate poses a significant threat, a number of factors must be considered.  The key consideration is public safety when assessing the inmate's proclivity for violence or escape against their placement needs.

A waiver of the Public Safety Factor is not required for inmates transferred via unescorted transfer to CCC placements.

Ordinarily, inmates with a single incident of violence should not automatically be excluded from CCC placement.  As noted earlier, clearly dangerous inmates should be excluded from CCC placement.

(1)   When there exists a basis for significant doubt regarding whether the inmate currently poses a threat to the community, the Warden should consider contacting the Chief USPO in the release district (see the Sample letter (Attachment A)) to seek guidance on the referral's appropriateness.  A copy of this letter shall be maintained in the Inmate Central File.

(2)   When an inmate is excluded under this subsection, a memorandum, signed by the Warden, shall be prepared and placed in the Inmate Central File to explain the rationale for exclusion from CC Programs.

j.   Inmates whose admission and release status is pretrial, holdover, or detainee.

PS 7310.04
12/16/98
Page 12

11.  <u>REFUSALS</u>.  When an eligible inmate refuses CCC placement, staff shall investigate the inmate's reasons.  Staff may honor an inmate's refusal of CCC placement.

Suitable reasons to decline placement might include previous CCC failure, potential conflict with other residents, and location or remoteness from release residence.  When the inmate does not present a suitable reason, and the unit team believes that a placement would serve a correctional need, the unit team shall make every effort to encourage participation.

When an inmate refuses placement, a memorandum, signed by the Associate Warden (Programs) and the inmate, shall be placed in the Inmate Central File.  The memorandum should document the inmate's rationale for refusal and all unit team effort to encourage participation.

12.  <u>CCC REFERRAL PROCEDURES</u>.  Normally 11 to 13 months before each inmate's probable release date, the unit team shall decide whether to refer an inmate to a Community Corrections program.

Medical staff shall notify the inmate's Case Manager promptly when a pregnancy is verified.  Upon notification, the unit team shall decide if a MINT referral to a Community Corrections program will be made.

a.  <u>Referral to CCM</u>.  Staff shall use the Institution Referral form (BP-210) (Attachment B) when referring an inmate for transfer to a CCC.  Information included in the Additional Information (11) and Specific Release Preparation Needs (12) sections must be as specific as possible regarding the inmate's needs.

Attachment B contains instructions for completing the Institution Referral form and related materials.  Signed copies of the "Community Based Program Agreement" must be included with all CCC referrals.  The Warden is the final decision-making authority for all CCC referrals the unit team recommends.

If the Warden approves the CCC referral, the unit team shall forward two copies of the Institutional Referral form and appropriate attachments to the CCM.  Staff shall enter the DST SENTRY assignment of "W CCC ACT."  Copies of appropriate documents are prepared so that one may be forwarded to the CCC while the CCM retains the other for reference.

A separate packet with appropriate copies shall be forwarded to the Transitional Services Manager (TSM) in the **receiving region where the inmate is being released** for graduates of Residential Drug Abuse Programs.  Staff are referred to the Drug Abuse Programs Manual for responsibilities and/or documentation requirements.  If the CCC referral packet is mailed prior to

PS 7310.04
12/16/98
Page 13

completion of the Treatment Summary and Referral form (BP-549), the Drug Abuse Treatment Coordinator shall forward the completed BP-549 form to the Transitional Services Manager in the region of the inmate's release and provide a copy to the unit team.

The referral packet shall be forwarded to the CCM at least 60 days prior to the maximum recommended range or date. However, additional time may be required for processing inmates with special community-based program needs (i.e. mental health, drug transition, disabilities, and inmates with higher security needs).

For MINT referrals, the referral packet shall ordinarily be forwarded to the CCM at least 60 days prior to the recommended date. If the inmate is committed to Bureau custody or arrives at the designated facility at any stage during the second trimester of pregnancy, the referral shall be forwarded to the CCM as quickly as possible.

If an inmate is scheduled for release via parole, and CCC placement is for 45 days or less, a copy of correspondence directed to the U.S. Parole Commission (USPC) outlining the release plan and requesting parole certificates, as well as copies of the USPO's letter recommending release plan approval, must be included in the referral package.

   b.  <u>Mandatory CCC Residence</u>.  When an inmate must reside in a CCC as a condition of parole, mandatory release, or supervised release supervision after release from confinement, the institution shall refer the case to the appropriate CCM, who shall refer the case for placement under these procedures:

Institutions shall notify the USPC of cases that cannot be placed (see specific information in Attachment B). Inmates in this category should not be referred for transitional purposes and have this time "stacked" on to the Court or USPC's ordered period of CCC placement.

Inmates releasing from an institution via 3621E CMPL or 4046C CMPL, or who have mandatory CCC residence as a condition of parole, mandatory release, or supervised release supervision, should be referred for release preparation transfer to a CCC, and the CCM should work with U.S. Probation to waive the CCC requirement during the period of supervision. The CCM shall attempt to affect the 180 day release preparation placement for inmates releasing via 3621E CMPL or 4046C CMPL. The CCM shall keep the appropriate U.S. Probation Office apprised of the inmate's progress toward reaching the goals of Community Corrections programming. Should the USPO still require CCC placement as a condition of supervision, the CCM will ordinarily honor the request.

PS 7310.04
12/16/98
Page 14

c. <u>Referral to CCC</u>.  CCMs shall immediately forward referrals to appropriate CCCs.  CCC staff shall notify CCMs in writing of acceptance or rejection.  When referrals are accepted, CCCs will send acceptance letters, subsistence collection agreements, and CCC rules and regulations to inmates in care of their Unit Managers.  Institution staff shall ensure acknowledgment forms are returned to CCCs.  CCMs shall monitor referrals for timely response from contractors.

d. <u>CCC Rejection</u>.  CCC staff must provide specific reasons, in writing, to CCMs when they reject referrals.  In such cases, CCMs shall determine if further discussion with the CCC staff is appropriate or, if not, referral to an alternate resource is possible.  When all placement options have been exhausted, the CCM shall inform the referring institution Warden, with copies to the Unit Manager, that the inmate cannot be transferred to a CCC and the reason for rejection.

e. <u>Transfer Date</u>.  When CCMs are notified of an inmate's acceptance by a CCC, a transfer date to the CCC is to be established, and the CCM shall enter the SENTRY destination assignment transaction.  The effective date shall be the approved future transfer date.

Destination assignments, "DST," have been established in SENTRY for contract CCCs and work release programs.  These assignments use the CCM facility code followed by the contract location code.  CCMs may add their contract location destination assignments for inmates in any Bureau facility.  When an inmate arrives at the CCC and is admitted to the location (in SENTRY), the destination assignment is automatically removed.

These assignments shall appear on the CCM and institution SENTRY daily log.  Institution staff may display rosters of inmates approved for CCC transfer, and CCMs may display lists of pending arrivals by contract location.

The location description (name of the CCC) shall appear on the inmate's profile.  If, for any reason, an inmate cannot be

PS 7310.04
12/16/98
Page 15

transferred to a CCC on the scheduled date, institution staff shall notify the CCM immediately.

13. <u>PREPARATION FOR TRANSFER</u>

a. <u>Trust Fund Account</u>.  No later than **three weeks** prior to the approved transfer date, unit staff are to determine the amount in the inmate's trust fund account that may be given to the inmate at the time of transfer.  A check or draft for the balance (with the inmate as payee) shall be sent to the CCC immediately.

In accordance with the Program Statement on Telephone Regulations for Inmates, inmates transferring to CCCs shall be qualified as "exception" cases during the three-week period prior to the approved transfer date for purposes of placing collect telephone calls.

Institution staff should use discretion in giving inmates large amounts of cash, and if there is reason to question an inmate's ability to handle money responsibly, the amount may be reduced.

For inmates who have no funds or resources, unit staff shall determine the extent to which a gratuity is indicated and shall initiate paperwork, if appropriate (see the Program Statement on Release Gratuities, Transportation, and Clothing).

If the institution is holding savings bonds for an inmate, or if an inmate has a savings account at a local bank, the unit staff is to ensure these financial resources are available at the release destination when the inmate arrives.

b. <u>Documentation to CCC</u>.  No later than **two weeks** prior to an inmate's approved transfer date, institution staff shall forward the following documents to the CCC:

(1)  Authorized Unescorted Commitments and Transfers (BP-385), with current photograph;

(2)  Original of the Transfer Order;

(3)  Copy of Furlough Application and Approval Record, with specific travel method and itinerary;

(4)  Receipt for CCC rules and regulations, if applicable (this may include the CCC's subsistence agreement form); and,

c. <u>Clothing</u>.  No later than **one week** prior to an inmate's approved transfer, staff shall make arrangements for release clothing.  Suitable release clothing shall be provided as described in the Program Statement on Release Gratuities, Transportation, and Clothing.  For non-MINT referrals, at a minimum, release clothing is to include adequate clothing to

complete a job search and perform work.  Additionally, an outer
garment, seasonably suitable for weather conditions at the
inmate's release destination, shall be provided.

   d.  <u>Medication</u>.  No later than **one week** prior to an inmate's
approved transfer, Health Services staff shall review the
inmate's medical record to determine if the inmate is on
continuous medication.  When an inmate is transferred to a CCC, a
30-day supply of chronic medication shall be provided pursuant to
a new prescription.  If an inmate is prescribed a controlled
substance, assistance from the CCM may be required to determine
if the CCC can accommodate the inmate's special medication needs.
Staff should refer to the Health Services Manual for further
clarification.  CCC staff are to safeguard, store, and dispense
controlled substances in accordance with the terms of their
Bureau contracts.

   e.  <u>Identification</u>.  It is essential that each inmate have some
acceptable form of identification while at a CCC.  Therefore,
during Institution Release Preparation Programs, unit staff shall
assist inmates to acquire social security cards (mandatory) and,
if possible, drivers license, and copies of their birth
certificates.  Additional photo identification may be required if
the inmate is using air transportation.  These items may be given
to an inmate on the transfer date, or mailed to CCCs **prior to**
transfer with the materials described in subsection b. above.

   f.  <u>Community Custody Status</u>.  An inmate must be assigned
"COMMUNITY" custody status prior to transfer to a CCC.  Unit
staff shall state the inmate's current custody status if other
than "COMMUNITY" on the Transfer Order in the Custody
Classification section.  Next to the current custody, unit staff
shall type "Community custody effective on (whatever date the
Warden deems appropriate)."

   g.  <u>Parole Commission Review of Disciplinary Action</u>.  An inmate
who has had a discipline hearing resulting in a Discipline
Hearing Officer finding, after USPC action to establish a
presumptive or effective parole date, may not be transferred to a
CCC until the Commission has considered the disciplinary report
and final action has been taken.

   h.  <u>Sentence Calculation</u>.  The Inmate Systems Manager (ISM) of
the sending institution shall ensure that an inmate's old law
sentence computation is "complete" with all appropriate good time
entered before the inmate departs the institution.

   i.  <u>Final Review of 3621(e) Eligibility</u>.  The decision to grant
an inmate early release is a significant one for the Bureau;
therefore, it is essential that unit staff carefully review
relevant statutory and regulatory criteria before an inmate's
final release under 18 U.S.C. § 3261(e).  Specifically, the Unit

PS 7310.04
12/16/98
Page 17

Manager or designee must ensure completion of "Final Review of
3621(e) Eligibility" (Attachment K from the Drug Abuse Programs
Manual),  before unescorted transfer to a CCC or release to a
detainer (Drug Abuse Programs Manual, Inmate).  Attachment K must
be completed and routed to the Warden.  Ordinarily, Attachment K
should be routed to the Warden along with other CCC release
paperwork (i.e., transfer order, furlough application, etc.);
however, a copy of Attachment K is not forwarded to the CCC.

The Drug Abuse Program (DAP) Coordinator and CMC must review
and sign Attachment K prior to the Warden's review.  The DAP
Coordinator's review is to ensure that items 5, 7, and 8 are
accurate.  Once Attachment K is signed and dated, the Unit
Manager must ensure that a copy is filed in the disclosable
portion of Section 5 (release processing) in the Inmate Central
File.  The original Attachment K shall be forwarded to the ISM
for filing in the Judgment and Commitment (J&C) file.

**No inmate shall be released from an institution to a CCC (or
detainer) until the ISM receives the Attachment K with
appropriate signatures.**

j.  Education.  To assist an inmate in securing employment, the
inmate should have a resume', a copy of his or her education
transcript, GED certificate, and any other education/vocational
training certificates completed during his or her confinement.

k.  Exemption from Time Requirements.  When transfer dates have
not been established in time for staff to implement the above
procedures within the time requirements, they shall be
accomplished as soon thereafter as possible.

14.  TRANSFER AND ARRIVAL NOTIFICATION

a.  Transportation Costs.  Staff are referred to the Program
Statement on Furloughs for procedures regarding transportation
costs for inmates scheduled for transfer to a CCC.

b.  Notification of Travel Schedule.  On the date of transfer,
the sending institution's ISM shall notify the CCM via BOPNet
GroupWise of the inmate's departure and travel schedule.  A copy
of this notification shall be placed in the inmate's J&C file.
If GroupWise is inoperable, the notification shall be made by
telephone and documented in the J&C file.

c.  Arrival Notification.  CCC staff shall notify CCMs
immediately when an inmate arrives as a transfer from an
institution.  Immediately means:

    (1)  Upon arrival, if during regular CCM working hours; or

    (2)  At the first opportunity during regular CCM working

hours if arrival is during evenings, weekends, or holidays.

d.  <u>Electronic Notification</u>.  By close of the business day
following an inmate's scheduled arrival, the CCM shall "admit"
the inmate in SENTRY, if the CCC has confirmed the inmate's
arrival.  When GroupWise is inoperable, notification of arrival
shall be made by telephone to the sending institution's ISM, and
the inmate "admitted" in SENTRY at the earliest opportunity.

e.  <u>Escape</u>.  If an inmate has not arrived at the CCC within a
reasonable period after the scheduled arrival time (no later than
24 hours), the CCM shall report the inmate as an escapee.  Then,
the ISM at the sending institution must be notified immediately
by telephone or GroupWise.

The ISM at the sending institution is responsible for updating
SENTRY to indicate the change in release status from "furlough
transfer" to "escape" as of the date the inmate fails to report.
The ISM at the sending institution also shall make the inmate's
sentence computation inoperative as of the date following the
escape.  Staff at the sending institution shall write an incident
report and conduct a UDC/DHO hearing in absentia.  The sending
institution shall make all notifications required by the Program
Statement on Escapes/Deaths Notification.  The ISM at the sending
institution shall also notify the FBI of the inmate escape.  The
ISM at the sending institution must also fax a copy of the Notice
of Escaped Federal Prisoner (BP-393) to the FBI, U.S. Marshals
Service, local law enforcement officials, and law enforcement at
the inmate's home of record.  The Inmate Central File is to be
retained at the sending institution.

The CCM shall notify the U.S. Marshals Service in the CCC
district.  The CCM shall also notify the Regional Director, the
Central Office, and the sending institution via GroupWise of the
escape.

f.  <u>Arrival Confirmation</u>.  The ISM at the sending institution
shall use SENTRY to confirm an inmate's arrival at a CCC.  When
an inmate's arrival is confirmed, the ISM shall forward the
following documents to the CCM by certified mail:

PS 7310.04
12/16/98
Page 19

(1)   Applicable release forms and certificates that have been completed insofar as is possible by unit staff and reviewed by ISM;

(2) Victim/Witness Notification form (BP-323), if applicable;

(3)   Completed and current committed fine forms and all related documentation such as the PSI, if applicable;

(4) Copies of conditions of supervised release, if applicable; and

(5) Appropriate forms and other documentation concerning final good conduct time awards for an inmate sentenced under the CCCA.

15.   <u>INMATE CENTRAL FILE</u>.  The Inmate Central File shall be retained at the institution consistent with provisions established in the Program Statement on Inmate Central File, Privacy Folder, and Parole Mini-files.


                              /s/
                         Kathleen Hawk Sawyer
                         Director

PS 7310.04
12/16/98
Attachment A

Sample letter for Wardens to send to Chief USPOs

John Jones, Chief USPO
Judicial District
Street Address
City, State  Zip Code

Re:  Doe, John
Reg. No.:  12345-678

Dear Mr. Jones:

    The above-noted inmate will complete his/her sentence on
_____ and is being considered for referral to a
Community Corrections Center (CCC) on or about _____
for prerelease services.  Because of certain factors in this
offender's case, we are closely reviewing his/her appropriateness
for CCC placement.  Therefore, I am soliciting your view in this
matter recognizing that your office will soon be responsible for
supervising this offender in the community.

    Please indicate below whether or not you favor release
through a CCC for this offender.  Feel free to attach additional
comments.  If you favor release through a CCC, I ask that you
consider providing some assistance in initiating the supervision
process while the offender resides in the CCC.  Please return
this letter as soon as possible so that release planning can be
finalized.

    Thank you for your assistance in this matter of mutual
concern.

                              Sincerely,

                              Warden

    _____    Yes, I favor referral to a CCC for
                        prerelease services.

    _____    No, I do not favor referral to a CCC.

Comments:_____

_____

                    _____
                    Chief USPO
                    District
                    _____
                    Date

Please refer to the latest issuance of BOPDOCS for a copy of BP-S210.073, **INSTITUTIONAL REFERRAL FOR CCC PLACEMENT.**

PS 7310.04
12/16/98
Attachment B, Page 2

**INSTRUCTIONS FOR COMPLETION OF INSTITUTIONAL REFERRAL FOR CCC PLACEMENT**

All federal institutions shall use the standard form "Institutional Referral for CCC Placement", BP-210, when referring inmates for community corrections placement in any type of community program.

The following instructions will be followed when completing the form:

**GENERAL INFORMATION:**

♦ Use the current EMS Community Corrections Directory (BOP COMM CORR DIR) or BOPDOCS Community Corrections Directory to determine the appropriate CCM.

♦ All referrals shall be signed by the Warden.

♦ Provide the inmate's full committed name and register number. The inmate's unit should also be included.

♦ Identification of Unit Manager and GroupWise mailbox codes will expedite notification.

♦ Institution name and mailing address allows CCC staff to send materials directly to the unit manager.

**SPECIFIC INFORMATION:**

1. Indicate the inmate's city of residence upon release. A complete address should be included in current progress report. Indicate the federal district of supervision.

2. The ISM shall insure the anticipated release date provided on the referral includes all eligible good time earnings. The date should be an accurate <u>estimate</u> of the date the inmate is to be released from custody. If release is by parole, only the parole date needs to be indicated. At the time of this review, the ISM will insure there are no detainers that would prevent CCC transfer.

3. Staff specifying a recommended placement date shall further indicate that the CCM should not adjust that date. (Include this information in Item 12.) CCMs shall adhere to the recommended date, with any adjustment only being downward due to budget or bedspace constraints as a factor.

PS 7310.04
12/16/98
Attachment B, Page 3

For MINT referrals, staff should provide a specific date of placement, which is normally two months prior to the requested delivery date.  Planned periods of longer than six months require the Regional Director's approval and the Chief U.S. Probation

Officer in the inmate's sentencing district to determine whether the judge concurs with the placement.  (Include this information in Item 12.)

4.  Indicate the date the report was submitted and attach a copy of any transmittal memo to the USPC.

5.  An inmate who has been scheduled for a statutory interim hearing may not be transferred to a CCC until after the hearing or unless the inmate waives the hearing.  If neither is the case, the CCM will hold the referral in abeyance until the matter is resolved.  This information should be included in item 11.

6.  Offenders sentenced under the Sentencing Reform Act or the Anti-Drug Abuse Act may have a term of supervised release following confinement.  Offenders convicted of drug offenses may have a Special Parole Term.

7.  Indicate if the inmate has "aftercare" requirements (must be imposed as a supervision condition by the U.S. Parole Commission, or the sentencing court).  This helps the CCM select the most appropriate facility.

8.  If the inmate is a Central Inmate Monitoring case, the Warden has clearance authority on all CIM cases with the exception of WITSEC cases.  The Inmate Monitoring Section, Central Office will provide CIM clearance for WITSEC cases.

9.  If the area of referral is not the sentencing district, staff will forward release planning materials to the probation office in the proposed district of supervision.  Institution staff should refer to the Operations Memorandum on Release Planning, Inmate - Memorandum of Understanding (MOU) Between the BOP and the Administrative Office of the U.S. Courts for further instructions.  At the time of the unit team's recommendation for CCC placement, the case manager should submit release plans to the USPO if other than the sentencing district.  A relocation acceptance letter should be included in the CCC referral packet. Additionally, for inmates releasing in their sentencing district, a copy of the proposed supervised release plan with the final progress report shall be forwarded to the probation office in the sentencing district for verification of residence and employment.

10.  The Program Statement on Fines and Costs describes institution responsibilities for CCC transfers for inmates who have fines.  If the inmate has a committed fine, include this information in item 11.

11.  It is extremely important to include any information that might have a bearing on the facility's decision to accept the inmate for placement.  Information on outstanding detainers or pending charges must be included.  Indicate if there is a substance abuse history.  Also, indicate if the inmate has successfully completed the institutional phase of the comprehensive drug treatment program.  If more space is needed, attach an additional page.

12.  Information on special needs of the individual and/or unusual circumstances is very important for staff in deciding on acceptance and setting up an individual program plan once the inmate is accepted.  If staff wish to recommend a specific facility or program, they may include that information here.  The CCM, in managing the CCC population, will consider the referenced special needs when establishing an acceptance date.  Therefore, detailed and specific comments in this section are very helpful. If more space is needed, attach an additional page.  Prenatal care needs should be addressed also.

Inmates who are <u>released</u> from institutions with a condition of parole, mandatory release, or supervised release that requires they reside in a CCC must be referred for CCC placement prior to their release.  CCMs will notify institutions of acceptance or rejection.

13.  For MINT referrals, indicate the expected date of delivery. and the projected date of the inmate's return to the parent institution.

●**INFORMATION TO BE INCLUDED IN THE CCC REFERRAL PACKET TO CCM**:

A checklist is provided on the referral form to insure that all necessary material is included.  CCMs who receive referrals without the required information or documents are instructed to hold the referral in abeyance until they are able to obtain the information from the institution.

**Referral Form**
All items shall be completed.  Do not indicate "See progress report".

PS 7310.04
12/16/98
Attachment B, Page 5

**Current Progress Report**
A current progress report (less than 180 days old at time of referral), including any significant new information that is available since the report was written, must be included with the referral. Especially important is specific information regarding proposed residence and employment (including telephone numbers), availability of other community resources, and any other information regarding release plans.

**Presentence Investigation/Violation Report**
Two copies of all relevant presentence investigation/violation report(s).

**Community Based Program Agreement**
This form allows facility staff to discuss the referral with family, potential employers, and other community resources and notifies the inmate of any special conditions of CCC residence such as financial responsibility and urinalysis. This form also acknowledges the inmate's agreement to comply with the rules and regulations of the Home Confinement program and stipulates that participation in home confinement may be an alternative to placement in a Community Corrections Center. Additionally, for MINT referrals, it notifies the inmate or the guardian/foster care provider of their responsibility for medical care and subsistence of the child while in a community based program.

**BP-339 CIM Case Information Summary**
This document is required for all CIM assignments except for "pure" separation cases.

**USPO Acceptance Letter**
If an inmate is releasing to a district other than the sentencing district, a relocation acceptance letter from the appropriate USPO must be included in the referral packet.

**Copy of Latest Parole Commission Notice of Action**
Provide the most current copy which includes <u>specific action</u>, such as the presumptive parole date, effective parole date, continue to expiration, etc.

**BP-351 Medical Evaluation for Transfer of Inmates to CCC Type Facility**
Must be completed prior to the referral in order to advise the facility of potential problems or special medical needs.

PS 7310.04
12/16/98
Attachment B, Page 6

**Judgment and Commitment Order**
Serves as documentation of authority to maintain custody and identifies special commitment conditions. If necessary, this document can be provided to the U.S. Marshals Service for purposes of apprehension or maintaining custody.

**Statement of Responsibility (MINT Referrals)**
For MINT referrals, this serves to notify the CCM, CCC, and institution staff of who will assume custody and total financial responsibility for the child.

●**INFORMATION TO BE FORWARDED TO THE TRANSITIONAL SERVICES MANAGER**:

Information should be forwarded to the TSM in the region where the inmate is releasing. Staff are to refer to the Drug Abuse

Programs Manual, Inmate for additional information for responsibilities/documentation.

**Treatment Summary and Referral Form - Drug Abuse Treatment Programs**

This form provides assessment findings, treatment progress and other pertinent information for inmates who are graduates of Residential Drug Abuse Programs.

**Agreement to Participate in Community Transition Programming**
By signing this form, the inmate acknowledges that he/she understands and agrees to comply with program rules and regulations of the Bureau's community-based drug programs.

**Progress Report**
Refer to summary provided in "Current Progress Report" for INFORMATION TO BE INCLUDED IN THE CCC REFERRAL PACKET TO CCM.

**Referral Form**
Refer to summary provided in "Referral Form" for INFORMATION TO BE INCLUDED IN THE CCC REFERRAL PACKET TO CCM.

**OTHER INFORMATION**

Any information or documents believed to be necessary to assist in the pre-release planning process. A current psychological report should be included if it is anticipated the inmate will have mental health needs.

PS 7310.04
12/16/98
Attachment B, Page 7

Correspondence from/to family, friends, prospective employers, probation officers, etc., that may provide specific information about release plans and resources.  A copy of the referral form is sent to the CUSPO in the sentencing district and the district of supervision.  Other pertinent documents will have already been sent by the institution to these offices.

<u>Procedures</u>

For inmates being referred to contract facilities, the CCM will forward the referral to the appropriate facility, with instructions for the facility director to reply to the CCM with a copy to the referring institution.  In addition to the transfer date, the facilities letter of acceptance will usually include documents for the inmate to sign and return prior to transfer.  Such documents should be returned to the CCC by institution staff with the BP-385(51), transfer order and furlough papers.

The CCM maintains a copy of the referral for reference, should any questions arise from the facility, USPO, inmate's family or the institution.

Using institution records, unit staff will complete as much information as they can on release paperwork.  Only the "unknowns" which must be determined while the inmate is in the CCC will be left blank.  Inmates do not sign release papers (acknowledging they understand supervision conditions) and institution staff do not sign "certifying release" prior to an inmate's transfer.  These certifications are done by CCC staff at the time of an inmate's release.

The institution is responsible for typing all information on release certificates.  The line "now confined in the" shall specify the name of the CCC from which the inmate is to be released.

The inmate should sign the space at the bottom of the release certificate indicating an understanding of the conditions of release before departure from the CCC.  The CCC Director is to sign the bottom portion of the form as the Chief Executive Officer verifying the inmate's release.

PS 7310.04
12/16/98
Attachment C

Please refer to the latest issuance of BOPDOCS for a copy of BP-S434.073
**COMMUNITY BASED PROGRAM AGREEMENT.**

PS 7310.04
12/16/98
Attachment D

Sample Statement of Responsibility for MINT Referral

Name
Address
City, State  Zipcode

RE:  DOE, Jane
     12345-678

Dear _____:

    Jane Doe, an inmate currently confined at the Federal Correctional Institution, _____(city_____, ___(state)___, has been accepted into the Mothers and Infants Together (MINT) Program and is tentatively scheduled to furlough transfer to ___(name of facility)____, ___(address)___, on _____.  She has an anticipated delivery date of _____.

    Ms. Doe advises that you, the father of the baby, will assume custody of the child, to include financial responsibility for medical care costs upon her release from the MINT Program. She indicated that your telephone number is _____.

    Accordingly, by signing this letter, you agree to assume custody of the child, including financial responsibility for medical care costs once Ms. Doe is released from the MINT Program.

    Please return this letter to the inmate's case manager, _____.  If there are any questions or concerns, please do not hesitate to contact me at ___(full phone number)___.

                         Sincerely,


                         XXXXX
                         Unit Manager


_____        _____
Signature of person assuming care and financial    Date
responsibility for Ms. Doe's baby / relationship
to inmate


cc:  CCM
     CCC
     HSA
     Controller
     Central File

Attachment 7

```
     MON30           *        PROGRAM REVIEW REPORT           *      01-10-2008
     PAGE 001                                                        11:37:25

 INSTITUTION: MON  MONTGOMERY FPC
 NAME.......: WILLIAMS, ROY                              REG. NO: 17566-075
 RESIDENCE..: ATHENS, AL 35611
 TYPE OF REVIEW......: INITIAL CLASSIFICATION/PROGRAM REVIEW
 NEXT REVIEW DATE...:  03/2008
 PROJ. RELEASE DATE..: 07-29-2008          RELEASE METHOD.: GCT REL
 PAROLE HEARING DATE.: NONE                HEARING TYPE...: NONE
 DATE OF NEXT CUSTODY REVIEW: 05/2008      DETAINERS (Y/N): N
 CIM STATUS (Y/N).....: N          IF YES, RECONCILED (Y/N): N/A
 PENDING CHARGES.....: None    None
 OFFENDER IS SUBJECT TO NOTIFICATION UNDER 18 U.S.C. 4042(B) (Y/N)....: yes
    IF YES - CIRCLE ONE - DRUG TRAFFICKING/CURRENT VIOLENCE/PAST VIOLENCE
 CATEGORY    - - - - - - - -    CURRENT ASSIGNMENT - - - - - - - -   EFF DATE  TIME

 CMA         PROG RPT        NEXT PROGRESS REPORT DUE DATE          04-09-2010  1550
 CMA         RPP PART        RELEASE PREP PGM PARTICIPATES          04-13-2007  1550
 CMA         RPP UNT C       RELEASE PREP UNIT PGM COMPLETE         10-05-2007  1643
 CMA         V94 CDA913      V94 CURR DRG TRAF ON/AFT 91394         04-13-2007  1550
 CUS         OUT             OUT CUSTODY                            03-29-2007  1207
 DRG         DAP DECL        RESIDENT DRUG TRMT DECLINED            04-18-2007  0805
 DRG         DRG E COMP      DRUG EDUCATION COMPLETED               06-06-2007  1709
 DRG         DRG I RQ C      DRG INTRV REQD: CONTRB TO OFF          04-13-2007  1550
 EDI         ESL HAS         ENGLISH PROFICIENT                     04-20-2007  0001
 EDI         GED HAS         COMPLETED GED OR HS DIPLOMA            04-20-2007  0001
 FRP         PART            FINANC RESP-PARTICIPATES               04-25-2007  1114
 LEV         MINIMUM         SECURITY CLASSIFICAT'N MINIMUM         03-28-2007  1318
 MDS         REG DUTY        NO MEDICAL RESTR--REGULAR DUTY         04-12-2007  1036
 MDS         YES F/S         CLEARED FOR FOOD SERVICE               04-12-2007  1036
 QTR         002-012U        HOUSE O/RANGE 02/BED 012U              07-06-2007  2327
 RLG         AMER IND        NATIVE AMERICAN INDIAN                 11-06-2007  1228
 WRK         CE01 B          GROUNDS/CUSTODIAL                      07-10-2007  0001
```

WORK PERFORMANCE RATING: _Good Work reports_____

_____

INCIDENT REPORTS SINCE LAST PROGRAM REVIEW: __Has maintained clear conduct_____

_____

_____

FRP PLAN/PROGRESS:  TRUST FUND DEPOSITS PAST 6 MO: $ 2,784 —

FRP PAYMENTS PAST 6 MO: $ 621    OBLG BALANCE: $ 4,454.00

CURRENT FRP PLAN: $ 207 mo   PAYMENTS COMMENSURATE: YES X / NO _____

```
MON30                 *        PROGRAM REVIEW REPORT          *        01-10-2008
PAGE 002                                                               11:37:25
```

IF NO, NEW PAYMENT PLAN: _Maintain @ $ 207_____

_____

_____

RELEASE PREPARATION PARTICIPATION: _____RPP Parts _____

_____

_____

_____

CCC RECOMMENDATION: __Recommended date will be 06-13-2008_____

_____

PROGRESS MADE SINCE LAST REVIEW: __1-Money Mgt?-yes 2-Resume writing/job search/dress
for success?- Yes, enrolled

_____

_____

GOALS FOR NEXT PROGRAM REVIEW MEETING: 1) Complt RPP #2 Dress for Sucess_

_②) Personal wellness Through Rec Activies._____

_____

_____

_____

_____

LONG TERM GOALS: _____

__1) Resume Gainful employment by 07-29-2008_____

_____

_____

_____

_____

```
MON30              *        PROGRAM REVIEW REPORT        *        01-10-2008
PAGE 003 OF 003                                                  11:37:25
```

OTHER INMATE REQUESTS/TEAM ACTIONS: _Request 5 Day_

_Furlough._ _Application provided._

_Review 407 /408_
_Jud Rec: Reviewed : Followed Designated MON_

SIGNATURES:

CHAIRPERSON: _____     INMATE: _____

DATE: _1-10-08_     DATE: _1-10-08_

```
MON30          *        PROGRAM REVIEW REPORT        *      10-26-2007
PAGE 001                                                    14:15:34
```

```
INSTITUTION: MON  MONTGOMERY FPC
NAME.......: WILLIAMS, ROY                    REG. NO: 17566-075
RESIDENCE..: ATHENS, AL 35611
TYPE OF REVIEW..: INITIAL CLASSIFICATION/PROGRAM REVIEW
NEXT REVIEW DATE....: 01/2008
PROJ. RELEASE DATE.: 07-29-2008        RELEASE METHOD.: GCT REL
PAROLE HEARING DATE.: NONE             HEARING TYPE...: NONE
DATE OF NEXT CUSTODY REVIEW: 5/2008    DETAINERS (Y/N): N
CIM STATUS (Y/N)....: N        IF YES, RECONCILED (Y/N)  NA
PENDING CHARGES.....:          None
OFFENDER IS SUBJECT TO NOTIFICATION UNDER 18 U.S.C. 4042(B) (Y/N).....: YES
   IF YES - CIRCLE ONE - DRUG TRAFFICKING/CURRENT VIOLENCE/PAST VIOLENCE
CATEGORY    - - - - -      CURRENT ASSIGNMENT - - - - - -    EFF DATE    TIME

CMA        PROG RPT      NEXT PROGRESS REPORT DUE DATE     04-09-2010   1550
CMA        RPP PART      RELEASE PREP PGM PARTICIPATES     04-13-2007   1550
CMA        RPP UNT C     RELEASE PREP UNIT PGM COMPLETE    10-05-2007   1643
CMA        V94 CDA913    V94 CURR DRG TRAF ON/AFT 91394    04-13-2007   1550
CUS        OUT           OUT CUSTODY                       03-29-2007   1207
DRG        DAP DECL      RESIDENT DRUG TRMT DECLINED       04-18-2007   0805
DRG        DRG E COMP    DRUG EDUCATION COMPLETED          06-06-2007   1709
DRG        DRG I RQ C    DRG INTRV REQD: CONTRB TO OFF     04-13-2007   1550
EDI        ESL HAS       ENGLISH PROFICIENT                04-20-2007   0001
EDI        GED HAS       COMPLETED GED OR HS DIPLOMA       04-20-2007   0001
FRP        PART          FINANC RESP-PARTICIPATES          04-25-2007   1114
LEV        MINIMUM       SECURITY CLASSIFICAT'N MINIMUM    03-28-2007   1318
MDS        REG DUTY      NO MEDICAL RESTR--REGULAR DUTY    04-12-2007   1036
MDS        YES F/S       CLEARED FOR FOOD SERVICE          04-12-2007   1036
QTR        002-012U      HOUSE O/RANGE 02/BED 012U         07-06-2007   2327
RLG        PROTESTANT    PROTESTANT                        04-19-2007   0913
WRK        CE01 B        GROUNDS/CUSTODIAL                 07-10-2007   0001
```

WORK PERFORMANCE RATING:  Good work reports

INCIDENT REPORTS SINCE LAST PROGRAM REVIEW:  Has maintained
Clear conduct

FRP PLAN/PROGRESS:  TRUST FUND DEPOSITS PAST 6 MO: $ 2,563

FRP PAYMENTS PAST 6 MO: $ 414 —    OBLG BALANCE: $ 4868 ~ Fine

CURRENT FRP PLAN: $ 207 mo    PAYMENTS COMMENSURATE: YES X / NO ___

MON30        *        PROGRAM REVIEW REPORT        *        10-26-2007
PAGE 002                                                   14:15:34

IF NO, NEW PAYMENT PLAN: 2563 - 450 - 2,113 - 414 - 1699 ÷ 6 = 283

current payment good, had a little extra $$ sent in.

RELEASE PREPARATION PARTICIPATION: RPP Parts

CCC RECOMMENDATION: Will recommend 6-13-08 after Relocation approved

PROGRESS MADE SINCE LAST REVIEW (1) Stress mgt - yes

(2) FRP - yes

GOALS FOR NEXT PROGRAM REVIEW MEETING:

(1) Money Mgt

(2) Either Resume Writing / Job Search / or Dress for Sucess

LONG TERM GOALS:

(1) Obtain RRC Placement by 7-29-08

```
   MON30         *        PROGRAM REVIEW REPORT         *     10-26-2007
PAGE 003 OF 003                                               14:15:34
```

OTHER INMATE REQUESTS/TEAM ACTIONS: _____

_____

_____

_____

_____

_____

_____

Review 407 / 408 _____

SIGNATURES:

CHAIRPERSON: _____     INMATE: _____

        DATE: 10-26-07                 DATE: 10-26-07

```
   MON30          *       PROGRAM REVIEW REPORT        *      07-27-2007
   PAGE 001                                                   16:50:24
```

INSTITUTION: MON  MONTGOMERY FPC

NAME.......: WILLIAMS, ROY                          REG. NO: 17566-075
RESIDENCE..: ATHENS, AL 35611

TYPE OF REVIEW......: INITIAL CLASSIFICATION/PROGRAM REVIEW
NEXT REVIEW DATE....: 10/2007

PROJ. RELEASE DATE..: 07-29-2008          RELEASE METHOD.: GCT REL
PAROLE HEARING DATE.: NONE                HEARING TYPE...: NONE

DATE OF NEXT CUSTODY REVIEW: 01/2008      DETAINERS (Y/N): N

CIM STATUS (Y/N)....: N          IF YES, RECONCILED (Y/N): Not

PENDING CHARGES.....: None Known

OFFENDER IS SUBJECT TO NOTIFICATION UNDER 18 U.S.C. 4042(B) (Y/N)....: yes
     IF YES - CIRCLE ONE < DRUG TRAFFICKING/CURRENT VIOLENCE/PAST VIOLENCE

CATEGORY  - - - - - -  CURRENT ASSIGNMENT - - - - - - -  EFF DATE   TIME

CMA        PROG RPT      NEXT PROGRESS REPORT DUE DATE    04-09-2010  1550
CMA        RPP PART      RELEASE PREP PGM PARTICIPATES    04-13-2007  1550
CMA        V94 CDA913    V94 CURR DRG TRAF ON/AFT 91394   04-13-2007  1550
CUS        OUT           OUT CUSTODY                      03-29-2007  1207
DRG        DAP DECL      RESIDENT DRUG TRMT DECLINED      04-18-2007  0805
DRG        DRG E COMP    DRUG EDUCATION COMPLETED         06-06-2007  1709
DRG        DRG I RQ C    DRG INTRV REQD: CONTRB TO OFF    04-13-2007  1550
EDI        ESL HAS       ENGLISH PROFICIENT               04-20-2007  0001
EDI        GED HAS       COMPLETED GED OR HS DIPLOMA      04-20-2007  0001
FRP        PART          FINANC RESP-PARTICIPATES         04-25-2007  1114
LEV        MINIMUM       SECURITY CLASSIFICAT'N MINIMUM   03-28-2007  1318
MDS        REG DUTY      NO MEDICAL RESTR--REGULAR DUTY   04-12-2007  1036
MDS        YES F/S       CLEARED FOR FOOD SERVICE         04-12-2007  1036
QTR        002-012U      HOUSE O/RANGE 02/BED 012U        07-06-2007  2327
RLG        PROTESTANT    PROTESTANT                       04-19-2007  0913
WRK        CE01 B        GROUNDS/CUSTODIAL                07-10-2007  0001

WORK PERFORMANCE RATING: None on File for Mon
but good from previous Institution

INCIDENT REPORTS SINCE LAST PROGRAM REVIEW: Has maintained
clear conduct.
```

---

FRP PLAN/PROGRESS:  TRUST FUND DEPOSITS PAST 6 MO: $ 1,721—

FRP PAYMENTS PAST 6 MO:  $ 25.00    OBLG BALANCE: $ 75.00 FA, 5,000 - Fine

CURRENT FRP PLAN: $ was $25 Qu  PAYMENTS COMMENSURATE: YES _____ / NO  X

```
MON30          *        PROGRAM REVIEW REPORT        *        07-27-2007
PAGE 002                                                      16:50:24
```

IF NO, NEW PAYMENT PLAN: 1721 - 450 = 1271 - 25 = 1,246

1246 ÷ 3 = 415 Quarter

1246 ÷ 6 = 207 month   (accept court documents being mailed that indicates fine was deffered.

RELEASE PREPARATION PARTICIPATION: RPP Part

CCC RECOMMENDATION: Will discuss at Oct 07 Team

PROGRESS MADE SINCE LAST REVIEW: ① Voc. Training? - No transfered ② Clear conduct - yes ③ FRP payment - yes.

GOALS FOR NEXT PROGRAM REVIEW MEETING:

① Stress mgt -

② Begin New FRP payments in Sept, or provide documents

LONG TERM GOALS:

① Participate in RPP Seminar by 6-13-2008

② Obtain RRC placement by 6-13-08

```
   MON30            *        PROGRAM REVIEW REPORT          *      07-27-2007
PAGE 003 OF 003                                                    16:50:24
```

OTHER INMATE REQUESTS/TEAM ACTIONS: _____

_____

_____

_____

_____

_____

_Review 407/408_____

SIGNATURES:

CHAIRPERSON: _____    INMATE: _____

        DATE: _7-30-07_____         DATE: _07/30/07_____